Judge Owsley
delivered the Opinion of the Court,
Reuben Rankin was charged with tiie murder of John Blake, and was indicted for the offence, put upon his trial, found guilty by the verdict of a jury, and sentenced'to be hung by the judgment of the court. J °
Between the time when the sentence of condemnation was pronounced, and the period fixed by the court for his execution, Rankin departed this life, having previous to his death, but after sentence, in due and legal form, made and published his will and testament in writing,, by which he dispos--ed of ail his estate. The will was afterwards prer sentedto the county court of Bourbon for probate, by the executors therein named, and though con-, tested by the heirs of Rankin, it was proved and. admitted to. record.
The heirs being dissatisfied with the decision of the county court, have brought the case before this court for revision.
The execution of tbe will, by the testator, in le--gal form, is not contested by the heirs, nor do.they pretend that he was not, at the date of the will of sane mind; but it is argued by their counsel, that after the testator w,as convicted of the murder charged against him, he was civiliter mortuns, and therefore incapable of making a valid will»
The premises assumed in this argument, are certainly not without semblance of authority for their support. Lord Coke in his commentary on Littleton, 130, a, says, that “besides men attainted in a praemunire, any person that is attainted of high treason, petit treason or felony, is disabled to bing any action, for he is extra legempositus, and is accounted in law, civiliter mortuns
Diversity between the ef; foots of conviction for tfoason, felony &c. and an entry into religion.
Person.at-tainted of felony might be sued,
One attain-ted of felony Could not sue in that state, but if pardoned might have his action for injuries suffered whilst under the disability.
But when this passage is compared with what is said by him in other parts of his institutes, it will be perceived that this dictum was not intended by him in the full latitude of expression. In the same institute, page 132, a, Lord Coke seems to confine the civil death to persons professed, or who have abjured the realm, or been banished by statute, or process of law; and in his third institute, 215, lie says, that there is a great diversity between itn attainder of treason or felony, and an entry into religion. He that is attainted of treason or felony, liave capacity to purchase lands, to him and his lieirs, which he cannot da who enters into, religion.
In the case of Banyster vs. Trussel, (Cro. Eliz. 516,) it was adjudged in an action brought against a person attainted of felony, he could not plead the attainder in bar, but should be put to answer. The same doctrine was recognized and confirmed by the court of King’s bench in the case of Ramsey vs. M’Donald, 1 Wilson; 217. Foster in his Crown Law, observes, that a person attainted is not absolutely at the disposal of dip crown, lie is so, for the ends of public justice', and for no other’purpose. Until execution, his creditors have an interest in his person, for securing their debts, and he is himself under the protection of the law, and to kill him is murder.
fíe was indeed, disabled to sue in his own name, but if beaten or maimed while under attainder, of if a woman was ravished, while under attainder, and a pardon afterwards ensued, the party injured might maintain an action, or appeal, as the case niiglit require, for the intermediate injury, Crown Law, 62, 3 s; other authorities of like import might be cited, but these are sufficient to prove, that although a person attainted of felony, may, for somfe purposes, liave been regarded as dead in law, he cannot be deemed civilly dead to all intents and purposes.
But the argument, though not to its full extent correct, does not lose its. force in the present case, provided, that by liis ,being convicted of the murder charged upon him, Rankin in contemplation of *533 law became incapable of making a will, or in other words; was quo ad the power to make a will, civili-ter mortuus.
jn England no felon convicted could aftenudg1-* ment, be-causo, by the ^ forfeited and his capacity |°s^cquire
where tiie accused died st00[[ n’mtre there was no lament was valid,
wills of traitors, aliens', felons and the wete valid except a-sainst the klBS‘
Whether the will of the convicted felon in Kentucky be'valid or no-, depends on whether all his estate be forfeited or not.
*533 In England, where attainder or conviction of felony, works not only corruption of blood, but also a forfeiture of the lands and goods of the offender, authority is not wanting to prove the incompetency of the attainted or convicted person, to make a will; but upon adverting to those authorities, it will be found, that the incompetency of the attainted or convicted person to do so, results exclusively from the forfeiture, which by the laws of that country follows the attainder, or conviction as an insepera-ble consequence, and from the incapacity of the person attainted, or convicted, afterwards to hold any estate except for the use and benefit of the king.
Thus in Shepherd’s Touchstone, page 404, it is said, “a traitor attainted from the time of a treason committed, can make no testament of his lands or goods; for they are all forfeited to the king, but after the time he hath a pardon from the king for his offence, he may make a testament of his lands or goods as another man; A man that is attainted, or convicted of felony, cannot make a testament of his lands or goods, for they are forfeited; but if a man be only indicted, and die before attainder, his testament is good for his lands and goods both. And if he be indicted, and will not answer upon bis arraignment, but standeth mute, &c. in this case, his lands are not forfeited, and therefore, it seems he may make a testament of them.”
The same doctrine is to he found in Swinb. part 11, s. 13, and in Bacon’s Ab. tilte Wills and Testaments, letter, B. And Bacon further adds, “that however the wills of traitors, aliens, felons and outlawed persons, are void as to the king or lord, that has right to the lands or goods by forfeiture or otherwise; yet the will is good against the testator himself, and all others, but such persons only.”
If therefore, the reason and doctrine of the law be correctly laid down by these authors, it will be *534 perceived that the validity or invalidity of the will,which was made by Rankin, must depend upon the question, whether or not, by the laws of this country, he forfeited the whole of his estate, upon being convicted of the murder of Blake? If on the conviction, the whole of his estate was forfeited, there remained nothing which he could transmit by will to others, and of course, according to the authorities cited, his will must be held void and inoperative. But if, notwithstanding the conviction, there was not an entire forfeiture of all his estate, according to the same .authorities, he was cap able of disposing of the interest not forfeited, and as to that interest, be it what it may, his will can have an operation, and must be adjudged valid.
No statute in Virginia concerning forfeitures.
Act of Kentucky of ’06 in relation to forfeitures for crimes.
We will, therefore, turn from the laws of England, and direct our attention to the acts of the Legislature of this State, and see whether any change has been made upon the subject of forfeiture. But before we do so, it may be proper to remark, that except a provision contained in the constitution of Yirginia, declaring that the Commonwealth should thereafter be entitled to all forfeitures which prior to the revolution went to the king; that State seems never to have acted upon the subject, until after the separation of this State from that.
The legislature of this State, for the first time, lookup the subject at the session of 1788. The forty-third and forty-fourth sections of that act, (1 Dig. L. K. 413,) declares. “Whensoever any person shall happen to be attainted, convicted or outlawed, of any treason, misprison of treason, murder or felony whatever, there shall be in no .case a forfeiture to the Commonwealth of dower of lands, or personal estate, but the same shall descend and pass, in like manner as by law directed, in case of persons dying intestate; nor shall any attainder work a corruption of blood, any law or usage to the contrary notwithstanding. Sec. 44, Saving to all and every other person and persons, bodies politic and corporate, their heirs and successors, and to every of them, (other than to such offender as shall be attainted, convicted or outlawed,) all such right, *535 title, interest, entry, lease, possession, condition, profit, commodity, and hereditaments, as they, or any of them had, or should, or of right ought to have, before, or at the time of said attainder, conviction or outlawry.”
Act of 1796 transfers al5 f07foifurethc commonwealth had i^mecHa tel v-’ to the rcp-resentatives °[cth¡^case 0f intestacy,
According to any rational interpretation that may be given to this act, we admit, it must be understood, not only to have deprived the Commonwealth of all right by forfeiture to any estate of persons thereafter convicted of treason or felony, but also to have directed whatever right the Commonwealth might have been entitled to in the estate of often-ders, under the then existing laws, upon their conviction of felony, to pass and descend immediately upon such conviction, in like maimer as by law directed, in case of persons dying intestate. It was the forfeited estate to which, by the existing laws the Commonwealth was entitled upon conviction of the offender, that was the subject of legislative deliberation, and which by the provisions of the act of 1796, was withdrawn from the Commonwealth, and at the same time translated to others, to whom it would pass and descend, in case the offender died intestate. By the laws of forfeiture then jn force the Commonwealth upon convictiqnof the offender became ipso facto, entitled to the estafe forfeited, and it was designed by the legislature to translate that same fight from the Commonwealth, and vest it in. others, in the same manner, and at the same time it would, without the passage of the act, have passed to the Commonwealth. The intention of the legist Jature to do so, seems obvious from the imperative language, "shall descend and pass,” used in the act; and is most clearly evinced by the saving of all rights, &c. to all other persons except the person attainted or convicted. The exception as to the offender in the saving, proves, that it was not intended by the legislature, that he should he benefit-edby depriving the Commonwealth of her right of forfeiture, and the saving as to the rights of all other persons, &c, proves, that whilst the legislature was renouncing the claim of the Commonwealth to all forfeiture, it was intended to pass that same interest ,to others, who without the saving, might hold *536 it to the prejudice of the rights of those mentioned in the saving.
No new fbr-ieiturp was created by this act of ’%
Forfeiture of the estate of persons at-tainted of crime, is limited by the constitution, in duration to the lifetime of the offender.
The. remainder of the estate or.balance of the fee, after deducting the estate for the felon’s life, remained at his disposal.
This residue of the estate in convicts property, nf-ter deducting this estate for his life, disposed of by the law, is devisable by the last will t and testament of the felon, made at any time before his execution.—
*536 But it was not intended by the act to create new forfeitures, or to increase existing penalties, against the persons attainted or convicted. His condition as respects his estate, was not to be bettered, nor was it to be rendered worse; any estate or interest in his lands and goods, which by the then existing laws, he would have been entitled to retain after attainder or conviction, was not intended by the legislature to be disposed of by the act; and if any such interest or estate there he, the attainted or convicted person must, notwithstanding the provisions of the act, be understood still to retain it.
We are therefore, led to enquire whether or not, at the passage of the act, the whole or a part only pf the offenders estate was, upon his attainder or conviction of felony, forfeited to the Commonwealth. The answer to this enquiry is found in the twentieth section of the tenth article of the constitution of this State. That section declares, “that no attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth.”
It was, therefore, not the absolute fia-simph es? tate of the offender in lands and goods, that according to tl>e constitution, was forfeited to the Commonwealth on attainder, or conviction of felony; but it was the interest or estate, which the offender was entitled to during his life only, that by the laws, in force at the passage of the act was forfeited-
The-reversionary interest, or in other words, that part of the estate which remained after the death of the offender, according to those laws, resided in him after conviction, and since the passage of the act, must, we apprehend, still he understood to continue to reside in the offender, though attainted or convicted.
It results, therefore, that notwithstanding Ran-kins’ conviction of the murder of Blake, he reta hired a reversionary interest in all the lands and pergonal estate owned by Ipm at the time of conviction; *537 §o that on account of any forfeiture of bis estate he cannot, according to the authorities cited, be deemed incompetent to dispose of the interest not forfeited, and still possessed by him. Nor is there any thing in the nature, or character of that interest which forbids its being disposed of by will. The constitution, as well as the act of 1796, had both declared that no conviction of felony should work corruption of blood. There was, therefore, nothing either in the sentence of condemnation against Rankin, or in the nature of the interest in reversion held by him, which would have prevented that interest from descending and passing to his legal re, presentatives, provided he had died intestate; and the rule is well settled, that whatever is descendable is also devisable by will.
—Therefore, the will is established— Chief Justice Bibb dissenting.
Triplett, for appellant; Talbot, for appellee.
It is, therefore, the opinion of a majority of the court, the Chief Justice dissenting, that notwithstanding the conviction of Rankin, he was capable of making a will, and that tire county court was correct in admitting it to record.
The order of that court, must consequently, be affirmed with cost.